UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BAM PROPERTIES LLC,<br>Plaintiff,<br>v.<br>CITY OF OROVILLE, et al.,<br>Defendants. | Case No. 2:26-cv-00041-CSK<br><br>ORDER<br>(ECF No. 17) |

Pending before the Court is Defendants City of Oroville, Patrick Piatt, and Richard Stanford's motion to strike in part and to dismiss Plaintiff BAM Properties LLC's First Amended Complaint ("FAC").[1] (ECF No. 17.) For the reasons that follow, the Court DENIES Defendants' motion to strike and GRANTS Defendants' motion to dismiss.

/ / /

/ / /

/ / /

/ / /

/ / /

[1] This case proceeds before the undersigned pursuant to 28 U.S.C. § 636(c) for all purposes, including the entry of judgment, pursuant to the consent of all parties. (ECF Nos. 9, 10, 11.) The motion to dismiss was submitted on the briefs and record pursuant to Local Rule 230(g). (ECF No. 20.)

# I. BACKGROUND

## A. Factual Allegations[2]

Plaintiff BAM Properties LLC is the owner of real property located at 2380 Oroville Quincy Highway, consisting of five buildings with six residential dwelling units (the "Property"). FAC ¶ 15 (ECF No. 16). In November 2023, Plaintiff submitted a development plan to the City for foundation repairs on Units 3 and 4 of the Property. *Id.* ¶¶ 36, 42.[3] On August 22, 2024, after Plaintiff made revised submissions, the City approved the development plan for the Property and notified Plaintiff that permits would be issued for each of the six buildings on the Property pending payment of fees. *Id.* ¶ 45.

In October 2025, the City notified Plaintiff that the permits would not be issued until Plaintiff "closed out" other open building permits on properties not owned by Plaintiff. *Id.* ¶ 48. Plaintiff alleges that, although it paid the fees for the six permits on November 5, 2025 and received a receipt from the City with assigned permit numbers, the City did not release the permit documents. *Id.* ¶¶ 49-51.

On December 2, 2025, Plaintiff contacted Defendant Richard Stanford, a City building inspector, by text to request that he perform inspections of the Property for its foundation work, but Defendant Stanford allegedly refused to perform the inspection, stating that issues remained unresolved on a building permit for a different property owned by Beck Investments LLC, located at 2040 High Street (the "High Street Property"). *Id.* ¶¶ 59-60. Non-party Alan Beck is an agent representative on behalf of both Plaintiff and Beck Investments LLC. *Id.* ¶ 18. Plaintiff alleges that Defendant Patrick Piatt, who is the City of Oroville's Community Development Director, has expressed

---

[2] These facts primarily derive from the FAC (ECF No. 16), which are construed in the light most favorable to Plaintiff as the non-moving party. *Faulkner v. ADT Sec. Servs.*, 706 F.3d 1017, 1019 (9th Cir. 2013). However, the Court does not assume the truth of any conclusory factual allegations or legal conclusions. *Paulsen v. CNF Inc.*, 559 F.3d 1061, 1071 (9th Cir. 2009).

[3] Around the same time, in response to an inspection and notice of violation from the City, Plaintiff obtained a permit for inspection and review of the Property's electrical system so that Plaintiff could complete electrical work on Units 3 and 4. *Id.* ¶¶ 37, 39. This permit does not appear to be the subject of the parties' present dispute.

personal hostility toward Alan Beck. *Id.* ¶¶ 10, 43. Throughout 2024, Beck Investments LLC has been performing work on the High Street Property pursuant to a building permit, during which the City allegedly performed multiple inspections and issued successive corrective actions as conditions to closing the permit. *Id.* ¶¶ 52-56.

The same day on December 2, 2025, Plaintiff sent a letter to Defendant Stanford to formally request an inspection and to forward Plaintiff's request to the City's Building Official, whom Plaintiff was unable to identify. *Id.* ¶¶ 62-63. Plaintiff alleges that, through Title 15 of the Oroville Municipal Code, the City has adopted the 2022 California Building Code, Title 24, Part 2 of the California Code of Regulations. *Id.* ¶ 25. According to Plaintiff, the 2022 California Building Code requires the City to establish a building inspection enforcement agency, led by a "Building Official" who is authorized to administer the California Building Code. *Id.* ¶ 28. Plaintiff alleges that the City has no appointed Building Official, as it cannot be Defendant Piatt or Defendant Stanford. *Id.* ¶¶ 32, 33. Plaintiff alleges that Mr. Beck visited the City's offices on December 8, 2025 and unsuccessfully requested to inspect the City's records identifying its Building Official. *Id.* ¶¶ 89-91. Mr. Beck was later contacted by the City's Director of Code Enforcement, Ron Belser, who allegedly identified the City's Building Official as Rick Mauldin. *Id.* ¶¶ 92-93. Plaintiff maintains that Mr. Mauldin cannot be the City's Building Official because, based on Plaintiff's previous interactions with Mr. Mauldin, he is a plan reviewer and has never held himself out as a Building Official. *Id.* ¶¶ 96-97. Plaintiff has also requested the identity of the Building Official from Defendants' counsel and has initiated a state-court action seeking disclosure of public records identifying the Building Official. *Id.* ¶¶ 98-100.

Although Defendant Stanford did not reply to Plaintiff's letter or identify the City's Building Official, Defendant Piatt responded to Plaintiff by email, stating that Plaintiff "had not been issued a permit" for foundation work on the Property and that Plaintiff needed to resolve "outstanding corrections" at the High Street Property before any new permits or inspections would proceed. *Id.* ¶ 64-65. Defendant Piatt warned that if Plaintiff

proceeded with work on the Property, Plaintiff would be in violation of the California Building Code and the Oroville Municipal Code, and the City would issue a Stop Work Order and further sanctions. *Id.* ¶ 65.

Plaintiff alleges that on December 4, 2025, a City employee issued a Stop Work Notice to Plaintiff. *Id.* ¶ 68, Exh. A. The Stop Work Notice cites a general violation under Oroville Municipal Code § 9.08.050(u), which provides that "any condition in violation of Title 15 of the Oroville Municipal Code (pertaining to building regulations)" may constitute a nuisance. *Id.* ¶¶ 70-71. Plaintiff alleges that it never received notice or communication of an underlying nuisance condition or violation of Title 15 of the Oroville Municipal Code. *Id.* ¶¶ 75, 80. Plaintiff further alleges that, because the City lacks a duly appointed Building Official or an otherwise appropriate designee in that role, the City lacks authority to determine whether Plaintiff has violated any provision of Title 15. *Id.* ¶ 76. The Stop Work Notice also failed to identify what specific corrective action was required, provide a minimum compliance period, or inform Plaintiff of an administrative hearing, appeal, or review process. *Id.* ¶¶ 81-82.

Plaintiff alleges that because the City has conditioned the issuance of permits for the Property on resolution of issues with the High Street Property, which Defendant Stanford has transformed into a "moving target for closeout of the work and permit on High Street," Plaintiff cannot satisfy the City's conditions for obtaining inspections or permits for the Property. *Id.* ¶¶ 84-85. Plaintiff alleges the City's refusal to perform inspections or release building permits for the Property has prevented Plaintiff from completing foundation repairs at the Property, renting the two unrepaired units on the Property, and obtaining fire or hazard insurance for the Property. *Id.* ¶¶ 86-88.

**B. Procedural Posture**

Plaintiff initiated this action on January 6, 2026. (ECF No. 1.) On May 29, 2026, the Court granted Defendants' motion to dismiss the Complaint and provided Plaintiff leave to amend the Complaint within thirty days. 5/29/2026 Order (ECF No. 15). The Court's order dismissed Plaintiff's two causes of action under 42 U.S.C. § 1983 for

substantive due process and procedural due process violations because the Complaint had failed to allege a protected property interest. *Id.* at 12. The Court dismissed both claims "with leave to amend to the extent Plaintiff can allege additional supportive facts." *Id.* at 13.

Plaintiff filed the FAC on June 26, 2026. (ECF No. 16.) The FAC re-asserts the Complaint's original two causes of action under 42 U.S.C. § 1983 for violation of Plaintiff's substantive due process and procedural due process rights, and adds a third cause of action under 42 U.S.C. § 1983 for regulatory taking without just compensation pursuant to the Fifth and Fourteenth Amendments. *Id.* ¶¶ 107-126. Defendants filed their motion to strike and dismiss the FAC on July 10, 2026. Defs. Mot. (ECF No. 17). Plaintiff filed its opposition on July 24, 2026. Pl. Opp'n (ECF No. 18). On August 3, 2026, Defendants filed their reply. Defs. Reply (ECF No. 19). Briefing is complete.

## II. LEGAL STANDARDS

### A. Failure to State a Claim under Rule 12(b)(6)

A claim may be dismissed because of the plaintiff's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A complaint fails to state a claim if it either lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory. *Mollett v. Netflix, Inc.,* 795 F.3d 1062, 1065 (9th Cir. 2015). When considering whether a claim has been stated, the court must accept the well-pleaded factual allegations as true and construe the complaint in the light most favorable to the non-moving party. *Id.* However, the court is not required to accept as true conclusory factual allegations contradicted by documents referenced in the complaint, or legal conclusions merely because they are cast in the form of factual allegations. *Paulsen v. CNF Inc.*, 559 F.3d 1061, 1071 (9th Cir. 2009).

## III. DISCUSSION

Defendants initially move to strike or dismiss Plaintiff's third cause of action under the Fifth Amendment Takings Clause because, Defendants argue, the Court granted Plaintiff limited leave to amend the original Complaint, and the Complaint did not

previously assert this claim. Defs. Mot. at 11. In the alternative, Defendants argue that Plaintiff's Takings Clause cause of action fails to state a claim. *Id.* at 12-15. Defendants further argue that Plaintiff's substantive and procedural due process claims again fail to state a claim. *Id.* at 15-18. Defendants contend that leave to amend would be futile and therefore should be denied. *Id.* at 18-19.

For the reasons set forth below, the Court denies Defendants' motion to strike and grants Defendants' motion to dismiss for failure to state a claim.

**A. Defendants' Motion to Strike**

Defendants argue that Plaintiff's third cause of action under 42 U.S.C. § 1983 for violation of the Takings Clause should be stricken or dismissed because the Court's leave to amend was limited to the Complaint's two claims under § 1983 for violations of procedural and substantive due process. Defs. Mot. at 11. Plaintiff denies that its new claim exceeds the scope of the Court's leave to amend. Pl. Opp'n at 16. Alternatively, Plaintiff requests that the Court grant Plaintiff leave to add its new claim pursuant to Rule 15. *Id.* at 17.

Federal Rule of Civil Procedure 15 permits a party to amend its pleading once as a matter of course within twenty-one days after serving it, or twenty-one days after a responsive pleading or Rule 12(b), (e), or (f) motion has been filed, whichever is earlier. Fed. R. Civ. P. 15(a). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2).

"District Courts in this circuit generally allow plaintiffs to add new claims and/or parties to an amended complaint where a prior order of dismissal granted leave to amend without limitation." *Jameson Beach Prop. Owners Ass'n v. United States*, 2014 WL 4925253, at *3 (E.D. Cal. Sept. 29, 2014). However, where a court has granted only limited leave to amend, the court may strike or dismiss new claims or parties in an amended complaint when the plaintiff failed to seek leave to amend. *Id.*; *see also* E.D. Cal. L.R. 110 ("Failure of . . . a party to comply with . . . any order of the Court may be grounds for imposition by the Court of any and all sanctions authorized by statute or

Rule or within the inherent power of the Court."). Thus, to assess whether a court granted leave to amend with or without limitation, the court must "look[] at the specific language of the prior order." *Id.*; *see also Raiser v. City of Los Angeles*, 2014 WL 794786, at *4 (C.D. Cal. Feb. 26, 2014) (court may dismiss new claims as improperly added "even if the court did not expressly bar amendments other than the one(s) it *did* allow"). New claims may be stricken or dismissed where the district court granted leave to amend "only to address the deficiencies in [Plaintiff's] existing causes of action identified in its order." *Benton v. Baker Hughes*, 2013 WL 3353636, at *3 (C.D. Cal. June 30, 2013); *see also White v. Cap. One, N.A.*, 2025 WL 842957, at *9 (E.D. Cal. Mar. 18, 2025).

Here, this Court granted leave to amend only to permit Plaintiff to cure deficiencies with the Complaint's two causes of action for procedural and substantive due process. In dismissing these claims, the Court concluded that Plaintiff had not sufficiently alleged a protected property interest to support both its due process claims, and to that end, it provided "leave to amend to the extent Plaintiff can allege additional supportive facts." 5/29/2026 Order at 13. The Order further provided that, "[b]ecause the defects in Plaintiff's Complaint could be corrected by amendment, the Court grants Plaintiff leave to amend its Complaint." *Id.* at 14. Thus, the Court's leave to amend was limited to amending the claims in the Complaint as "the Court specifically identified the deficiency to be cured." *Jameson Beach*, 2014 WL 4925253, at *4. The Court's order "cannot be construed as granting Plaintiffs leave to replead . . . claims [that] were not pleaded in the first place." *Yau v. Deutsche Bank Nat. Tr. Co. Americas*, 2011 WL 8326579, at *2 (C.D. Cal. Aug. 31, 2011); (*see generally* ECF No. 1).

However, although the Court agrees with Defendants that Plaintiff's Takings Clause claim exceeds the scope of the Court's leave to amend, courts in this district have declined to strike portions of an amended complaint "when it does not appear that any of the parties will be prejudiced by allowing the change" and "where the case was in its infancy and the Court has not yet entered a scheduling order." *Beavers v. New Penn*

*Fin. LLC*, 2018 WL 385421, at *3 (E.D. Cal. Jan. 11, 2018) (citation modified). Here, Defendants would not be prejudiced because they argue alternatively that Plaintiff's Takings Clause claim fails to state a claim, and no scheduling order has been issued in this action. Accordingly, the Court denies Defendants' motion to strike Plaintiff's Takings Clause claim. *See id.* (denying motion to strike where case was not scheduled and defendants concurrently filed a motion to dismiss the same claims they sought to strike). The Court proceeds to evaluate whether Plaintiff adequately states a claim under the Takings Clause.

**B. Failure to State a Claim**

1. Regulatory Taking

Defendants contend that Plaintiff's § 1983 claim for violation of the Takings Clause fails to state a claim because Plaintiff has not sufficiently alleged a *Penn Central* regulatory taking. Defs. Mot. at 13-15. In opposition, Plaintiff argues that the FAC alleges facts supporting a regulatory taking under *Penn Central*. Pl. Opp'n at 14-15. Defendants also contend that Plaintiff has not sufficiently alleged a *per se* regulatory taking. Defs. Mot. at 12-13. Plaintiff's opposition does not respond to this argument. Accordingly, the Court deems Plaintiff's argument forfeited and considers Plaintiff's Takings Clause claim under *Penn Central* only. *See Shree Shiva, LLC v. City of Redding*, 2022 WL 463245, at *1 (E.D. Cal. Feb. 15, 2022) ("Plaintiff, by failing to address this argument in opposition, concedes this point."); *Jenkins v. Cnty. of Riverside*, 398 F.3d 1093, 1095 n.4 (9th Cir. 2005).

The Fifth Amendment Takings Clause provides that private property shall not "be taken for public use, without just compensation." U.S. Const. amend. V. "Although the paradigm of an unconstitutional taking is the direct appropriation of property, the Supreme Court has long acknowledged that 'if regulation goes too far it will be recognized as a taking.'" *Colony Cove Props., LLC v. City of Carson*, 888 F.3d 445, 450 (9th Cir. 2018) (quoting *Penn. Coal Co. v. Mahon*, 260 U.S. 393, 415 (1922)). Regulatory actions constitute takings where they "are functionally equivalent to the classic taking in

which government directly appropriates private property or ousts the owner from his domain." *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 539 (2005). The inquiry for regulatory takings "is characterized by essentially ad hoc, factual inquiries, designed to allow careful examination and weighing of all the relevant circumstances." *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Plan. Agency*, 535 U.S. 302, 322 (2002) (citation modified). Under the *Penn Central* factors, a court considers (1) "[t]he economic impact of the regulation on the claimant," (2) "the extent to which the regulation has interfered with distinct investment-backed expectations," and (3) "the character of the governmental action." *Penn Cent. Transp. Co. v. City of New York*, 438 U.S. 104, 124 (1978).

Upon review of the *Penn Central* factors, the Court concludes that Plaintiff fails to state a regulatory takings claim.

*a. Economic Impact*

First, Plaintiff has not established a sufficient economic impact. "[E]conomic impact is determined by comparing the total value of the affected property before and after the government action." *Colony Cove*, 888 F.3d at 451. Courts in this circuit have held that "diminution in property value because of governmental regulation ranging from 75% to 92.5% does not constitute a taking." *Id.*; *see also MHC Fin. Ltd. P'ship v. City of San Rafael*, 714 F.3d 1118 (9th Cir. 2013).

Here, Plaintiff asserts that it has suffered economic impact due to "payment of approximately $9,000 in permit fees, the inability to complete construction, the inability to obtain inspections, occupancy approvals, and certain insurance, continuing carrying costs, delayed rental income, and the continued inability to place Units 3 and 4 back into productive residential use." Pl. Opp'n at 14; *see also* FAC ¶¶ 50, 86-88. However, Plaintiff's alleged economic impacts relate solely to its efforts to complete repairs on, and rent out, two of six units on the Property, rather than the impact on the post-deprivation value of the Property in its entirety. *See* FAC ¶¶ 122-123. Plaintiff therefore fails to create a plausible inference that its diminution in property value is so great that it

constitutes a taking.

Further, if "an owner possesses a full 'bundle' of property rights, the destruction of one 'strand' of the bundle is not a taking, because the aggregate must be viewed in its entirety." *Andrus v. Allard*, 444 U.S. 51, 65-66 (1979). Here, Plaintiff has not shown it has been deprived of any other rights besides a right to build or rent, such as its ability to sell the land. *See Friedman v. City of Fairfax*, 2024 WL 3925729, at *8 (N.D. Cal. Aug. 23, 2024) (holding plaintiff failed to plead economic impact based on loss of permit for construction of home because plaintiff failed to allege loss of other rights), *aff'd*, 2025 WL 3654681 (9th Cir. Dec. 17, 2025). For this additional reason, Plaintiff has not established sufficient economic impact for a regulatory taking.

*b. Investment-Backed Expectations*

Second, Plaintiff fails to allege interference with an investment-backed expectation. "To form the basis for a taking claim, a purported distinct investment-backed expectation must be objectively reasonable." *Colony Cove*, 888 F.3d at 452. This means the expectation must be "more than a unilateral expectation or an abstract need." *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1005-06 (1984) (citation modified). "[W]hat is relevant and important in judging reasonable expectations is the regulatory environment at the time of the acquisition of the property." *Bridge Aina Le'a, LLC v. Land Use Comm'n*, 950 F.3d 610, 634 (9th Cir. 2020).

Here, the FAC alleges that Defendants interfered with Plaintiff's "investment-backed expectations in rehabilitating the property, obtaining permits and inspections, completing the required work, and returning the units to productive residential use." FAC ¶ 124. Plaintiff argues its expectations were reasonable because the City approved its development project in August 2024, and Plaintiff subsequently paid permit fees and obtained permit numbers in November 2025. Pl. Opp'n at 14. But Plaintiff apparently concedes that it may not be entitled to those expectations because Plaintiff acknowledges that it may not "overrule discretionary code determinations by the Building Official" and states that it "seeks only to require the City to administer the inspection

process required by the Building Code." Pl. Opp'n at 15. Plaintiff also does not explain how it can have a reasonable expectation that the City's initial project approval in August 2024 would enable Plaintiff to obtain permits as late as November 2025, pass every subsequent inspection, satisfy any additional requirements under the California Building Code and Oroville Municipal Code, and successfully complete its development project. Thus, Plaintiff has not alleged non-conclusory allegations that it had more than a unilateral expectation in its desired outcomes. *See Diller v. Schenk*, 1986 WL 1788, at *19 (N.D. Cal. Feb. 6, 1986) ("[E]ven investment-backed expectations may not be reasonable if their fruition depends on discretionary acts by governmental authorities, i.e., acts, like issuing building permits, whose future performance cannot be assured.").

*c. Character of Governmental Action*

Finally, Plaintiff has not alleged that the character of the government action here, namely, the City's refusal to proceed with issuing permits and performing inspections on the Property, constitutes a taking. "[G]overnment actions that may be characterized as acquisitions of resources to permit or facilitate uniquely public functions have often been held to constitute 'takings.'" *Penn Cent.*, 438 U.S. at 128. A government action is less likely to constitute a taking where the "interference arises from some public program adjusting the benefits and burdens of economic life to promote the common good." *Id.* at 124.

Here, Plaintiff concedes that the California Building Code serves a public health and safety purpose but argues that the City's actions against Plaintiff have the character of a taking because they were arbitrary and "serve no health and safety objective." Pl. Opp'n at 21-21. Plaintiff's argument fails. "[I]f a government action is found to be impermissible—for instance because it fails to meet the 'public use' requirement or is so arbitrary as to violate due process—that is the end of the inquiry. No amount of compensation can authorize such action. . . . Whatever the merits of that claim, it does not sound under the Takings Clause." *Lingle*, 544 U.S. at 543. Accordingly, "the alleged impermissibility of the [City]'s actions cannot form the basis of a takings (as opposed to a

substantive due process) claim." *Honchariw, Tr., Honchariw Fam. Tr. v. Cnty. of Stanislaus*, 2024 WL 3904955, at *9 (E.D. Cal. Aug. 22, 2024), *aff'd*, 2025 WL 3527318 (9th Cir. Dec. 9, 2025); *see also Friedman*, 2024 WL 3925729, at *9 n.9 ("Plaintiff also argues that the character of the permit suspension was like a physical taking because it affected only Plaintiff. This resembles a substantive due process argument—that the land use regulation arbitrarily singled him out—making it inappropriate for a takings analysis.").

In summary, Plaintiff has not plausibly pleaded a regulatory taking under any of the *Penn Central* factors. Plaintiff's third § 1983 cause of action for regulatory taking is dismissed. *See Friedman*, 2024 WL 3925729, at *8-9.

2. Procedural and Substantive Due Process Claims

Defendants contend that Plaintiff's § 1983 claims for procedural and substantive due process fail to state a claim again because the FAC does not allege a protected property interest. Defs. Mot. at 15-17.

To state a claim under 42 U.S.C. § 1983, a plaintiff must show (1) the defendant committed the alleged conduct while acting under color of state law; and (2) the plaintiff was deprived of a constitutional right as a result of the defendant's conduct. *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988). Further, to state a procedural due process claim under 42 U.S.C. § 1983, a plaintiff must allege: (1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections. *Kildare v. Saenz*, 325 F.3d 1078, 1085 (9th Cir. 2003); *see Bd. of Regents v. Roth*, 408 U.S. 564, 569-70 (1972). Where a constitutionally protected liberty or property interest is at stake, determination of what process is due is a fact-specific inquiry. *See Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). Similarly, to state a substantive due process claim under 42 U.S.C. § 1983, a plaintiff must allege a deprivation of life, liberty, or property in a way that "shocks the conscience" or "interferes with rights implicit in the concept of ordered liberty." *Nunez v. City of Los Angeles*, 147 F.3d 867, 871 (9th Cir. 1998).

Liberty or property interests may arise from the United States Constitution or from state law. *See Meachum v. Fano*, 427 U.S. 215, 223-27 (1976); *Shanks v. Dressel*, 540 F.3d 1082, 1091 (9th Cir. 2008) (a governing state statute that compels a result upon compliance with certain criteria, none of which involve the exercise of discretion by the reviewing body, creates a constitutionally protected property interest). For a plaintiff "[t]o have a property interest in a benefit . . . . He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Roth*, 408 U.S. at 577. If a plaintiff asserts a property right in a building permit, it must establish the legal basis for its entitlement to the permit. *See John Ketch LLC v. San Juan Cnty.*, 759 F. Supp. 3d 1121, 1134 (W.D. Wash. 2024) (dismissing due process claims because plaintiff does not identify legal basis in statutory language for claimed property right in building permit or the process to appeal permit denial); *Shanks*, 540 F.3d at 1091-92 (holding that plaintiff failed to allege property interest in proper procedure for permitting decisions because no ordinances imposed affirmative duties on municipal defendants that limited discretion).

Here, the FAC alleges that, "[b]y submitting plans, obtaining plan approval, paying required permit fees, receiving permit numbers, and seeking inspections, Plaintiff possessed a legitimate claim of entitlement to have those matters administered in accordance with the procedures established by state and local law." FAC ¶ 108. Plaintiff accordingly argues that it has a property interest in the mandatory, ministerial duties imposed on the City by several statutory or regulatory regimes. First, Plaintiff cites the California Building Code,[4] California Code of Regulations, Title 24, Part 2. Pl. Opp'n at 6-8; FAC ¶ 28. Second, Plaintiff cites the Permit Streamlining Act, Cal. Gov't Code §§ 65920 *et seq.*, which Plaintiff argues limits a municipality's "discretion to delay or impede qualifying development projects." Pl. Opp'n at 7; FAC ¶ 29. Third, Plaintiff cites the Housing Accountability Act, Cal. Gov't Code § 65589.5, as establishing "mandatory

[4] As discussed above, the City adopted the California Building Code in Title 15 of the Oroville Municipal Code.

procedural protections and statutory limitations governing local permitting decisions against arbitrary delay, disapproval, or the imposition of conditions that render project completion infeasible absent the findings and objective standards required by statute." Pl. Opp'n at 8; FAC ¶ 30.

Once again, Plaintiff has not alleged a protected property interest. "Absent a substantive property interest in the outcome of procedure, [Plaintiff] is not constitutionally entitled to insist on compliance with the procedure itself. To hold otherwise would immediately incorporate virtually every regulation into the Constitution." *Shanks*, 540 F.3d at 1092 (citation modified). Although Plaintiff relies on *Logan v. Zimmerman Brush Co.*, 455 U.S. 422 (1982) to show a property interest in statutory and regulatory procedure, that case is distinguishable because, "unlike in *Logan* . . . Plaintiff has not argued that the relevant procedural rights . . . can be surrendered for value, or resemble more traditional conceptions of property in that they have an ascertainable monetary value." *Jensen v. Brown*, 131 F.4th 677, 700 (9th Cir. 2025) (citation modified). Thus, Plaintiff has not established a legitimate claim of entitlement to purportedly mandatory procedures provided in the California Building Code, Permit Streamlining Act, or Housing Accountability Act. "Only if the governing statute compels a result upon compliance with certain criteria, none of which involve the exercise of discretion by the reviewing body, does it create a constitutionally protected property interest." *Shanks*, 540 F.3d at 1091 (citation modified).

Apart from claiming an entitlement to procedure in and of itself, Plaintiff has not sufficiently alleged facts establishing that a certain substantive result should be compelled here. To the extent Plaintiff asserts a property interest in obtaining permits and inspections for the Property, *see* Pl. Opp'n at 9, the FAC lacks allegations supporting that result. First, Plaintiff has not identified which provisions in the California Building Code compel the issuance of permits upon satisfaction of certain objective criteria. *See John Ketch*, 759 F. Supp. 3d at 1134; *Wayne v. Sierra Cnty.*, 2025 WL 2410966, at *9 (E.D. Cal. Aug. 20, 2025) (finding no property interest alleged where

"Plaintiffs do not identify any statutes compelling some non-discretionary result that was not obtained"), *report and recommendation adopted*, 2026 WL 778409 (E.D. Cal. Mar. 19, 2026). Second, although Plaintiff argues that other state statues such as the Housing Accountability Act have placed restrictions on the "local approval of qualifying housing developments,"[5] Plaintiff has not identified which provisions of the Act compel a substantive result to provide permits or inspections, or how those provisions would apply here.

Contrary to Plaintiff's contentions, it appears that the California Building Code grants discretion in determining whether a permit should be issued: "***If*** the building official is ***satisfied*** that the proposed work conforms to the requirements of this code . . . the building official shall issue a permit therefor. . ." Cal. Code Regs., tit. 24, pt. 2 § 105.3.1. At least one district court in the Ninth Circuit has interpreted similar language as discretionary. *See LKS Enters., LLC v. City of Silverton*, 2017 WL 890085, at *4 (D. Or. Mar. 6, 2017) (holding that equivalent provision under Oregon law precludes property interest in permit because it "confers broad discretion on the building inspector to issue a permit"). Another district court has held that a different provision of the California Building Code grants discretion to *revoke* permits. *See* Cal. Code Regs., tit. 24, pt. 2 § 105.6 ("The Building Official ***may***, in writing, suspend or revoke a permit . . ."); *Mohamed v. Cnty. of Sarmento*, 2016 WL 6635777, at *6 (E.D. Cal. Nov. 8, 2016) (citing Cal. Code Regs., tit. 24, pt. 2 § 105.6 and holding that plaintiffs lacked protectable property interest in revoked permits where plaintiffs failed to show entitlement to permits under local or state law).

Plaintiff suggests that it need not establish an entitlement to the issuance of permits for the Property because the City had already issued the permits, functionally speaking, when it approved Plaintiff's development project, accepted Plaintiff's permit

---

[5] Plaintiff makes this argument in response to the statement in *Thompson v. City of Lake Elsinore*, 18 Cal. App. 4th 49 (1993), that the "issuance of building permits . . . is a discretionary function." *Id.* at 57.

fees, and assigned permit numbers. Pl. Opp'n at 10; FAC ¶¶ 45, 51, 51. Therefore, according to Plaintiff, the City has lost its discretion to act in contravention of its prior "issuance" of permits, as in *Thompson v. City of Lake Elsinore*, 18 Cal. App. 4th 49 (1993).

Plaintiff's reasoning is unavailing. In *Thompson*, the California Court of Appeal held that once a building permit had already been issued, the Uniform Building Code permitted no discretion for a building official to then withhold a "certificate of occupancy." *Id.* at 57-58. A "certificate of occupancy" is not at issue here. Plaintiff must link the FAC's factual allegations regarding Plaintiff's permitting and inspection process with state or local laws that dictate mandatory substantive results upon the fulfillment of certain criteria. But Plaintiff fails to do so, as Plaintiff has not explained how any state statute or regulation would require the "release" of permit documents when the City approved the project in August 2024, notified Plaintiff in October 2025—over a year later—that permits would in fact not be issued, and issued only permit numbers when Plaintiff paid permit fees that were assigned a year prior. *See* FAC ¶¶ 45, 48-51.

Plaintiff's final argument, somewhat circular, is that the Permit Streamlining Act and the Housing Accountability Act must provide some entitlement to the continuation of a permitting and inspection process once begun, because otherwise, "[a] municipality could technically comply with the initial approval requirements while indefinitely refusing to carry out the remainder of the permitting process, effectively preventing construction without ever formally denying the application." Pl. Opp'n' at 11. Again, Plaintiff's contentions are too vague. Without explaining how any statutory or regulatory provisions mandate a specific substantive result here, such that Plaintiff has a property interest in the favorable completion of permitting and inspection procedures, Plaintiff cannot succeed on its due process claims. *See John Ketch*, 759 F. Supp. 3d at 1134; *Wayne*, 2025 WL 2410966, at *9; *Mohamed*, 2016 WL 6635777, at *6.

**C. Leave to Amend**

If a complaint can possibly cured by additional factual allegations, a district court

should grant leave to amend. *Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013). However, leave to amend need not be given if amendment would be futile. *Lathus v. City of Huntington Beach*, 56 F.4th 1238, 1243 (9th Cir. 2023). When a plaintiff has previously amended the complaint, a district court's discretion to deny leave to amend is "particularly broad." *Salameh*, 726 F.3d at 1133.

Here, as to Plaintiff's new regulatory taking claim, amendment would be futile where Plaintiff has not identified any additional facts that it could allege to overcome the deficiencies of its takings claim. *See* Pl. Opp'n; *see also Friedman*, 2024 WL 3925729, at *8-9. As to Plaintiff's procedural due process and substantive due process claims, the Court previously granted Plaintiff leave to amend both claims after granting Defendants' first motion to dismiss. *See* 5/29/2026 Order. Plaintiff was not, however, able to cure the defects. The Court therefore exercises its discretion and declines to grant further leave to amend.

## IV. CONCLUSION

In conclusion, IT IS HEREBY ORDERED that:

1. Defendants' motion to strike (ECF No. 17) is DENIED;
2. Defendants' motion to dismiss (ECF No. 17) is GRANTED;
3. Plaintiff's First Amended Complaint (ECF No. 16) is DISMISSED without leave to amend.
4. The Clerk of the Court is directed to CLOSE this case.

Dated: August 18, 2026

CHI SOO KIM
UNITED STATES MAGISTRATE JUDGE

8, bam.0041.26